Good morning, your honors. May it please the court, my name is Juan Carlos Jauregui. I'm a student at the UCLA School of Law. I am joined by attorney Cynthia Merrill, who will also be arguing. We are pro bono amicus counsel, and with the agreement of counsel of record, we'll be conducting the argument on behalf of Petitioner Jesusa Tomas-Mateo, who wished to reserve one minute for rebuttal. I will be addressing BIA's legal error in failing to consider the actual argument raised by Ms. Tomas-Mateo in her appeal brief to the BIA. Ms. Merrill will address the merits of Ms. Tomas-Mateo's claim, as well as the CAC claim. Your honors, the BIA misread Ms. Tomas-Mateo's appellate brief and addressed the wrong argument. The basis of Ms. Tomas-Mateo's application for withholding a removal is that she is persecuted by the police, who are unwilling to protect her and her family on account of their status as conjurable Indians. Scalia. Your Honor, the BIA misread Ms. Tomas-Mateo's claim in her appeal brief to the BIA. The basis of Ms. Tomas-Mateo's claim is that she is persecuted by the police,  Indians. Your Honor, the BIA misread Ms. Tomas-Mateo's claim in her appeal brief to the BIA. The basis of Ms. Tomas-Mateo's claim in her appeal brief is that she is persecuted by the police. It's different than the ordinary way you argue withholding of removal. Our argument is that she suffered psychological harm by the police who refused to help her, as well as they Wait a minute, wait a minute, there are two different things. I thought that she had her sister raped by some gang members when they were 14 or 15 years of age. Correct. Are you saying now that we misread that and it's actually the police who raped her? No. No, she was raped by the gangs. Gang. All right. So now, but you're not, you're abandoning the fact that she was persecuted by gangs and is likely to be persecuted again as uncontrolled elements in Guatemala. What is your argument now? So argument is that the police refusal to protect Ms. Tomas-Mateo and her family on account of their status as conjugal Indians amounted to persecution. That this inflicted harm upon Ms. Tomas-Mateo and her families that rose to the level of persecution. Well, it's an interesting theory and it does seem to me that it was raised before the BIA and that the BIA didn't address it. Do you have any support for the theory that if, I mean, it sounds like it makes some kind of sense, but is there any case law support for the notion that if a, if the reason the police won't, are unable or unwilling, unwilling to protect somebody is a protected ground, that that's persecution? There hasn't been a, I haven't found a case specifically like this. We have found cases where it's come close, where police refusal to protect and other governments' inaction in terms of medical treatment in conjunction with direct physical harm on account of other private actors has amounted to persecution, but that police inaction was considered a part of that, the persecution. Counsel, let me get this straight because this is somewhat new. You're not saying that the gang members persecuted her because she was a Conjoba. You're saying that they persecuted her just because of random criminal activity, but when she complained, she and her sister complained to the police, the police failed to control these gang members who weren't themselves persecuting on account of one of the five factors, but the police failure to protect became persecution as one of the five factors. That's right. We're not saying, we're not conceding that the gangs did not persecute her on account of a protected ground, but we concede that there's no evidence of that in the record. So our argument is that the police refusal to protect on account of her status as a Conjoba Indian amounted to persecution. Now, the argument is a fairly technical argument. You made the argument and the BIA never addressed it, so we should remand. Correct. But what if we looked at the record ourselves and said, really, there's no evidence that the BIA, that the police actually were doing it for that reason? I mean, there's this one sentence. It's kind of, I mean, it's pretty at least ambiguous, if not worse, in terms of why the police weren't protecting her. So Ms. Merrill will address the merits closure, but since the BIA never addressed it, the fact that it is ambiguous, the fact that it is a question still to be determined. So you're saying they could read the statement that way and we should just send it back? Well, since they never addressed it, then we should send it back so that they can address it, because since it's possible to read it that way, it's possible that it's – this is a cognizable claim that they never addressed, and so they should address it, you know, they should address it. This Court should remand it. But what's the best case that you'd like us to rely on as a basis for remanding it? As a basis for remand, there's Sadaic, I believe is the name of the case, where the BIA is not free to ignore arguments raised by a petitioner. No, I mean – But it doesn't matter whether there's anything to this argument. Particularly, the argument was made and it should have been addressed. Right. That's correct. If I could yield to Ms. Merrill to address the merits. Sure. Good morning, Your Honors. I would like to pick up with exactly where my colleague left off. You were asking what is the evidence in the record that there is some sort of persecution by the police. First of all, let me preface that by saying that, as this Court has acknowledged, discrimination can rise to the level of persecution, as this Court said in Marquerie. Now, here what you have is a form of discrimination, police refusal to assist and on the grounds of tribal membership. And that discrimination has resulted in consequences severe enough to be persecution. The assault and attempted gang rape of petitioner at age 14, continued gang rape of her sister, the trigger that prompted her to leave the country, the harassment and terrorizing of her family over the years. But the sister was gang raped or was raped and the petitioner here stayed in Guatemala another 11 or 12 years without incident. Well, it was not entirely without. How persistent must this persecution have been? What she testified was that it was not entirely without incident, that in point of fact, the gang sort of clustered around her house so that they were under threat from them. For 11 years? Well, she didn't specify because, as she said, she doesn't know how to count very well, so that she was unable to specify number of years. But she said, we were always afraid they were around the house. They came after me in a variety of ways, soliciting sex from her, pressuring her to join the gangs. At some point, her father was abducted by guerrillas and taken off to the mountains. So this was an ongoing form of harassment and ongoing against her sister as well. And as you know, violence against family members does constitute persecution. Now, you're asking, what is the evidence that this is on account of her tribal membership? As you pointed out, there is one statement in her credible testimony in which she says, because they regarded us as having no rights in their eyes, we were a humble people. She's talking about her tribe, and we had no rights. That's what we don't know, whether she was talking about her tribe or she was just talking about poor people in the village. She refers specifically to our people and that they regarded us as having no rights. Excuse me? The police never helped us. We didn't have any rights in their eyes. Right. Now, we don't know if she's talking about Conjugal, whether she's talking about she and her sister, or whether she's talking about poor people in general. When she refers to Peas, you don't see anything about tribe, Indians, indigenous, Conjugal in her testimony. Well, we believe that you need to read her testimony in the context of her asylum application. She came before the IJ in order to make the case, as she said in her asylum application, that she was seeking asylum on account of her membership in the Conjugal Indian tribe. And in that context, when she's asked, did you go to the police, she talks about our people. Can I ask a fairly out of left field question? Sure. I know you picked up the case as pro bono counsel after all the briefing and so on. I wondered whether, it seemed to me what this really was, at least arguably, was potential domestic abuse. I mean, what she really seemed to be afraid of was going back because she'd had some guy who she was living with and he was going to be angry at her and he was going to get the gangs after her. Now, isn't there a ground of asylum, a special ground of asylum for that? There is a special ground for asylum for that. I would have to say that I have not seen it as domestic abuse primarily because of the ongoing violence against her and her family from people that she suggests were coming in from outside. Oh, right. I mean, if you really read between the lines here as to what she was really worried about, at the very end she says, before I left, I was involved with a man, I lived with him, and he hates me because I came up here and I had children with another man. If I go back, I'm afraid that he's going to get these gang members to harm me. I think that contributes to the violence. I think that that in some respects has the same nexus insofar as it is the police in action against her, but yes, that was not argued previously, but certainly that would be a ground and that might be a solid reason for remanding this case on an open record to explore that more fully. When I read this record, I didn't get much of an impression that her counsel did her a lot of good at the hearing. I think her counsel, you're correct. And even when he gets to the BIA, if you read his brief, it's cut and paste. That's correct, Your Honor. And I think that that is one reason why that this case should be remanded. She's clearly doing her best to talk about these various incidents. Her counsel is not following up and, for example, saying, how do we read that? We are humble people. What about the man who is harassing you? Is this a form of domestic abuse? Why do you think the police will not help you? I see that we just have a little under a minute. We'd like to reserve that for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Jem Sponzo on behalf of the Respondent. First and foremost, I'd just like to say that the only application that is properly before the Court is Petitioner's request for withholding of removal. Her CAC claim was not exhausted in her appeal to the Board, and thusly is not properly before this Court. As Petitioner has apparently abandoned what was her initial claim before the agency, that the gangs, in fact, persecuted her, I would begin simply by saying that this Court has held, as we set forth in our answering brief, that a belief that the police would not assist you is insufficient. And that is apparently what we have at this point. Petitioner's testimony, admittedly narrow, but set forth with the assistance of counsel, simply indicates that the police never help. That's at page 65 of the administrative record. That cannot be read as indicating, as Petitioner has variously claimed before the Board and in her opening. So there's a relatively recent opinion on unable to help called Afrie, which seems to say, which says, as I wrote it, that you don't necessarily have to go ask them, because if somebody else is at it, I mean, if you know there's a pattern that says we won't help you, members of your tribe, and they should pay us, then you don't have to go do it yourself.  Correct, Your Honor. So what's the relevance of what you just said? Working from the record that we have, the issue in this case is that Petitioner's claim has evolved from what she set forth before the immigration judge in her merits hearing to what her claim was before the Board, inclusive of her present assertions that the police refused to help her, that the police would not help her. You don't doubt that she did make that argument to the BIA, and the BIA did not, Mr. Esso? I would take issue with whether the Board, in fact, thoroughly evaluated the claim. The issue is that Petitioner's assertion that the police would not help is not supported by her testimony. That's not the testimony she provided in immigration court. She simply set forth the many issues encountered in her village, and then surmised that the police never helped. She said the police never help us. Correct, Your Honor. Unless we pay them. But the inquiry before this Court is to see whether the record compels reversal. The inquiry is whether the BIA addressed the issue. Correct. The Board's decision my apologies, Your Honor, in her appeal to the Board. Perhaps if you begin there. So before the immigration judge. Hold on. Okay. I've got her. Well, I've got the brief. I don't know if I have her appeal. Her appeal brief, Your Honor? Her brief to the Board. Correct. That's the first point where I believe her representations become problematic. For the immigration judge, as Your Honor pointed out in Petitioner's opening, it's unclear whether she reported this incident to the police. It's unclear whether she's actually the police. But just because I'm questioning. But, Your Honor, if you go to the brief that they filed, it says legal argument paragraph 1, and part of that argument, the Respondent's fear was based upon persecution of members of the Conjugal Tribe who were not protected by law enforcement authorities. Correct. And that claim was thusly considered by the Board. Where is that? Where was it considered by the Board? All right. Admittedly, and I'll preface my response by acknowledging that the agency decisions that we have here are brief. They are very narrow. But Petitioner provided a total of 11 pages of testimony, with the assistance of the Respondent. The Board's decision, succinctly states that the transcript is void of any testimony discussing the Respondent's fear associated with her tribe membership. Moreover, we note that the Respondent has not submitted any evidence that establishes    That element has been apparently abandoned. The phrase utilized by the immigration judge is that Petitioner, Respondent in that context, has not met the objective elements of her claim. Again, there are many remedies that may be available to Petitioner at this point if there is an ineffective assistance of counsel claim to be made. But I still need you to tell me where in the BIA – I understand the BIA opinion is short, but it's also pretty clear about the fact that what it was considering was whether gang members target conneuble tribe members. It says that she feared random acts of gang violence. It's devoid of any testimony discussing her fear associated with her tribe membership. We note that she hasn't submitted any objective evidence that established that gang members target connuable tribe members. So where there do you think that there was any recognition of this, you know, kind of interesting and unusual theory? I understand it wasn't spelled out, it wasn't case law, but it's novel, it's interesting, you'd certainly want the BIA to address it first. It certainly is. Unfortunately, and this would require reading between the lines of the Board's decision, and if this Court is looking for an explicit assessment of that particular line from Petitioner's appeal brief, it isn't here. I readily concede that point. But Petitioner's representation that the police refused to help her, which smacks of some testimony, some evidence that she did make a report, that she did go to the police to seek their assistance after the attempted sexual assault she encountered, it's not borne out by her testimony. I mean, we just went over earlier the fact that the case law does not require that she went to seek their assistance. It does not require it, but it similarly provides, as this Court has held, that it is insufficient for an individual, and as set forth in Respondent's answer in brief, it's insufficient to simply believe or think or speculate that the police would not help you, thusly not attempt to avail yourself of police protection. And then they don't say, I didn't think they would help me. She said, they never help us. Correct. That's a factual statement. Correct, Your Honor. But that statement was properly read by the agency as not indicating that Petitioner ever sought police assistance. Well, maybe it might have been if they'd said it, but they didn't say anything about it at all. In the immigration judge's decision, he says that Petitioner failed to meet the objective elements of the claim. In her appeal to the board, Petitioner's claim evolves. Now she sets forth that the police refused to help her. Now she sets forth in greater detail that her particular ethnicity is, at bottom,  All of those issues were considered by the board. The board, in an admittedly brief decision, elected to affirm the decision of the immigration judge and properly conclude that Petitioner's ethnicity is simply not a basis for any of the harm that she claims to have suffered in Guatemala, and that is, therefore, the basis for her applications for relief. That's the agency of the decision that we have. And as Your Honor has pointed out during Petitioner's opening, there are many remedies that Petitioner might seek. That just isn't what we have before us on this particular record. We have a narrow immigration judge's decision, properly evaluating Petitioner's testimony. We have an admittedly narrow board decision, properly affirming the immigration judge's decision and considering those arguments raised by Petitioner on appeal, which were not for the immigration judge. And we have now a very different claim as set forth in Petitioner's opening and reply briefs. Had that claim been fleshed out for the agency? Sotomayor, a different claim than was in the briefs here? Correct. The same claim that was in the briefs here. It appears to have evolved again, Your Honor, as Petitioner abandons the assertion that the gang violence she suffered was a basis for her applications for relief. It's simply a case perhaps best juxtaposed by taking Petitioner's second opening brief and comparing that against her 11 pages of testimony. It's insufficient to point out alternative interpretations of the evidence and testimony. It's not enough for Petitioner to identify different ways in which her claim and her testimony might be read. The inquiry is to see whether the record compels reversal of the agency's conclusions. The agency here found that Petitioner had failed to demonstrate the objective elements of her claim. Do you know any case law regarding this theory of that, that if the reason why the police won't protect you from violence, even if the violence, let's assume the violence is not based on a protected grant, but the refusal to protect is? Is that covered by the Act? I do not know of any cases offhand, Your Honor. I would be happy to investigate that for you further. But unfortunately, again, the position taken in our answering brief and the position I take today is simply that Petitioner's testimony cannot be read as leading us to that analysis. We have Petitioner coming forth and very honestly and very open to her claim. I'm sorry. I see that my time has run out. Go ahead. Finish your comment. Petitioner very candidly set forth her claim. As Your Honor pointed out during Petitioner's opening, when provided an opportunity to offer additional detail to flesh out her story, she went to a jilted lover and a proposal that she refused. Petitioner honestly told the Court that she didn't seek police assistance, she didn't report her claim, because she didn't believe they would help her. And that is why Respondent's brief goes to cases in which this Court had recognized that that belief was not enough. Thank you, Your Honors. You have a minute. Thank you. Your Honors, we'd like to say, first of all, that counsel for the government did just concede that, in fact, the BIA did not address the gist of Ms. Tomas Mateo's claim in their decision. In other words, they did not address the claim that inaction by the police was a form of persecution. Under Sagaiac, the Court is compelled, therefore, to remand for this consideration of this issue in the first instance. The Court cannot defer to the IJ's or the BIA's reading of what happened at the hearing because it did not address it at all. There is nothing on that issue to defer to. It's completely unaddressed. I'm not receiving the evidence that she ever called police. Whether one reads her statement as her having called the police. She does have the burden of proof on that. But she doesn't have to prove that she called the police. She stated, whether one reads it as being, we called the police and they didn't help us, or one reads it, we didn't call the police because it would be futile, both of those point to inaction by the police that under the law of this circuit can constitute persecution. Sotomayor, we don't actually know the answer to that question. Do you know in the case law about that? Case law is clear that she does not have to call the police if she shows futility. And here, her question is just, is what is there is no case law. And whether it would be persecution on a protected ground if the police were not protecting her on a protected ground, but what they're protecting her from was not on a protected ground. Not with that particular fact pattern, although there are cases such as Narayan, in which cited as additional contributory persecution is police inaction. Narayan and Sarita both talk about that. But this is a very specific claim. Correct. I can sort of just off the top of my head see arguments both ways. Nobody's really made any coherent arguments on the subject at this point. Well, this claim fits quite well within the definition of persecution, which is the infliction of suffering or harm on account of one's difference in a way that would be regarded as offensive. Whether the police have actively assaulted somebody or whether the police have acquiesced and condoned the assault by somebody else, both of those amount to the infliction of harm. We might think about the parallel law, for example, on the Convention Against Torture, which, by the way, was cited in Ms. Tomas Mateo's brief to the BIA. But there, police acquiescence is found when the police willingly turn a blind eye to actions by private actors. And that's because there's no nexus requirement. That's correct. But in this instance, we would say there is a nexus here. The question is whether there has to be action. And there is nothing in the case law that suggests that the actual agent of violence also has to be the agent of persecution. That particular thing is never in the case law anywhere. And so logically speaking, this fits within those cases that find also as a form of persecution, police inaction. Okay. Thank you, Ms. Merrill. Thank you very much. The matter is submitted. By the way, we do appreciate your arguments, and we also appreciate the fact that you guys are willing to step in and provide some assistance to the petitioner and to us.
judges: Paez, Berzon, Bea